## IN THE DISTRICT COURT OF JEFFERSON COUNTY, KANSAS

Donna Huffman,                                           )
                              Plaintiff,                   )
                                                          )      Case No. JF-2022-CV-64
                        vs.                               )
                                                          )      Civil
City of Oskaloosa Kansas,                                 )
                              Defendant.                   )      2022 AUG 15 PM3:17
                                                                 JEFFERSON CO DIST C

---

### PETITION

**COMES NOW** Plaintiff Donna Huffman for recovery of statutory penalties[1] caused by the

Defendant for their actions and non-actions.

### JURISDICTION & VENUE

**1.**      Plaintiff is and has been, at all relevant times, been a citizen of the State of Kansas

residing in Jefferson County Kansas.

2.      The City of Oskaloosa is a municipality in Jefferson County Kansas who is being served

through the City Clerk, Patty Hamm[2].

        The City of Oskaloosa, through employees and members of the Council, have long held

animus towards Donna Huffman, particularly after Donna was prevailing party relating to the

same property being damaged and their conduct thereafter.   Because of this history, the

longstanding staff take unreasonable positions which disregard her personal and property rights

despite being the owner of the flagship building in Oskaloosa, Union Block[3], commonly known as

301 and 303 Jefferson.

### FACTS[4]

---

[1] Plaintiff puts the City on Notice of Torts Claim Act liability by letter and will file separately at expiration of the time
then consolidate or will amend to include claims and damages.
[2] KSA 60-304(d)
[3] Built in 1892 and upon the historic register.
[4] The facts will be supplemented as discovery progresses.

**Exhibit A**

1.      Plaintiff purchased 301 Jefferson Street in Oskaloosa Kansas for her business and personal use in January 2000.

2.      In or about 2003, Plaintiff gained an interest then purchased 303 Jefferson St. in Oskaloosa, Kansas by virtue of purchased 303 Jefferson Street.

3.      In the Spring of 2010, the City of Oskaloosa began replacing gas lines. During the construction, they failed to take necessary precautions regarding the historic building and ultimately damaged the two properties then, through Bill Heard, engaged in an offensive cover up.[5]

4.      Not only had the destruction of the cistern occurred, but upon information and belief Bill Heard concealed the damage from Huffman.

5.      *No communication was ever provided* from the City of this damage.

6.      Additionally, Huffman learned that the City of Oskaloosa had also unilaterally taken previous action which eliminated the benefit of the sump pump in 301 Jefferson by modifications outside the building, cutting and cementing closed the pipe/drain from the outside, also concealed.

7.      Plaintiff was prevailing party[6].  Various repairs were made and the City agreed to keep the alley grade in a manner runoff was not an issue, for example.

8.      City Attorney Mike Hayes had previously assisted these parties in resolving issues and had ushered in an era of peace which lasted about 6 years.  Being familiar with the animus suggested to Huffman, and the City, that they buy her

---

[5] Petition in Wyandotte County Kansas.  Incorporated by reference.
[6] City Attorney Mike Hayes was familiar with the animus and even suggested to Huffman, and the City, that they buy her buildings and use for offices prior to him leaving office.  He had previously assisted these parties in resolving issues and had ushered in an era of peace.

**Exhibit A**

buildings and use for offices prior to him leaving office.  He had previously assisted

9.      As a matter of history that relates to the retaliatory conduct in the last suit,

the City of Oskaloosa Kansas had a long history of issues relating to estimated bills

which would be estimated at minimums for multiple then a few months later a large

usage would be recorded which deprived Huffman's business and other Oskaloosa

residents the accurate billing.   (For example, mailing low estimated bills for 2-3

months on an amount UNDER the number of gallons that is included in the base price,

then doing a reading charging more as if the usage was in the month of the reading

when the total would have been in the included or near base price range.)

ILLUSTRATION[7]

($M^81$, estimate lower than total allowed at base rate)
+M2, estimate lower than total allowed at base rate)
+M3, estimate lower than total allowed at base rate)

M4 – actual reading which triggers overuse charges despite dividing the 4
months the total would have been at or near the total amount and no
overuse charges or low overuse charges.

Such incentives the City monetarily for failing to perform the required minimum function

of reading  the meters accurately and within time.[9]

10.      At a point, near in time to the estimated bills, the parties agreed that the

City of Oskaloosa would change the meters in the basement buildings for electronic

readings which no longer required entry into the property.

---

[7] To visualize the statement above, but not tied to any specific month.  Also based on current posting rates rather than
tied to the historical which will be a subject of discovery.
[8] M= Month
[9] IF the City were to need to estimate then it should be required to provide the *payor the full minimum usage*.

3

**Exhibit A**

11.     **At all relevant times, those newer water meters were working fine.**

12.     As happens with older city works, leaks would occur outside of the building and require repair.

13.     One such a leak occurred in October of 2018 which required the City to close the sidewalk and open the street for repair near 303 Jefferson Street.

14.     Without the guidance of Mike Hayes the City began reverting to the old ways and, for example, decided to redo sidewalks and corners all around the square EXCEPT in front of the flagship building which is Donna's property.

15.     Although Mr. Heard was advised by Donna and Craig that they objected to moving the meters with rationale, the City proceeded to flex their power without regard to the expense and risk of Donna.

16.     Despite knowing that the City was responsible for the water lines going up to the water meters, which were in the basements of the buildings, and despite knowing the lines break outside of the building, the City decided to unilaterally change the rights and obligations of Donna Huffman through a series of concealments and misrepresentations which, among other things, violated the Kansas Consumer Protection Act.

## COUNT 1 –
## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
### (KSA 50-623 *et seq.*)

17.     The foregoing facts are incorporated by reference as though fully stated herein.

4

**Exhibit A**

18.     Donna Huffman is a consumer[10] as an individual[11], who sought and acquired water, and the services therewith, for personal, family, household, and business purposes at 301 Jefferson Street, Oskaloosa, KS 66066.

19.     Donna Huffman is a consumer[12] as an individual[13], who sought and acquired water, and the services therewith, for personal, family, household, and business purposes at 303 Jefferson Street, Oskaloosa, KS 66066.

20.     The City of Oskaloosa is a supplier of water and water services as a manufacturer, distributor, seller,[14] or other person[15], who in the ordinary course of business distributes, supplies, and sells water to both 301 and 303 Jefferson Street, Oskaloosa, KS 66066.

21.     Plaintiff is aggrieved, for example, by the untruth in dealings which were contrary than represented, unilateral change of her rights and obligations, exercised overreach with no bargaining power, and other conduct that also resulted in foreseeable pecuniary damages.

22.     At some unknown point, believed to be in late 2018, the City decided to move the newer, working, electronically read meters from 301 Jefferson Street to the street and 303 Jefferson Street to the sidewalk.

23.     The City then began discussing meter relocation with Donna and Craig who explained that the change was not acceptable for reasons that included the change in the obligation for repair under the sidewalk and in the street and concerns over the City digging

---

[10] KSA 50-624(b)
[11] Alternatively as a family partnership at times.
[12] KSA 50-624(b)
[13] Alternatively as a sole proprietor at times.
[14] Kansas Statute providing City the power to sell water. KSA 12-808
[15] Person expressly includes the "government", "government subdivision", and/or "agency".

5

**Exhibit A**

too close to the building as nothing needed repair or should be disturbed.

24.     At some time thereafter, the City began sending letters requesting that Huffman (and her husband) sign an agreement to allow the move the water meters.

## DECEPTION RELATING TO THE "AGREEMENT" SIGNATURE DEMANDS

25.     Letters came and were recirculated that were designed to and were advancing a false impression that this meter move was going all around the square.

> **"All other businesses around the downtown square have completed their agreements and yours remains the only outstanding agreements."**

Despite doing a reasonable investigation, other businesses were not presented with agreements nor did their meters get moved.

24. Upon request to the City under KORA, *no other signed agreements* from other business around the square were sent back to Huffman.

## CONCEALMENT EXAMPLE

25.     Although the project appears to have involved only Huffman's buildings, Huffman *was not copied on any communication to the Historical Society* which was later discovered to have received a letter which implied the move was to help with water leaking into the basements of 301 and 303 Jefferson.

> "The water meters are currently located in the basement of these properties (301 & 303 Jefferson) at time causing leaking and flooding in the basement. The City plans to relocate the meters to the street or sidewalk of the buildings.  The meters should be underground or covered and not alter the aesthetics of the property.  No new holes will need to be cut…"

## THE THREAT

26.     The City of Oskaloosa also threatened if the "agreement" wasn't signed that the move would happen anyway and the cost of the move would be collected from Huffman.

## UNFAIR LIMIT ON WARRANTY

27.     The City of Oskaloosa also demanded an equivalent to a no consideration hold

**Exhibit A**

harmless for the forced meter move declaring essentially no warranty of the work they stated would happen with or without the agreement.

## DEMAND FOR APPEARANCE

28.     The City demanded that Plaintiff sign the agreement or attend the meeting to discuss terms.

> "While your request was not in writing as required by the letter dated November 30, 2018, I will assume that you are not interested in signing the agreement and will instead be attending the meeting to discuss its terms. I want to make it clear that the November 30, 2018 letter provided you with two options: signing the agreement or attending a Council meeting to discuss this relocation in the hopes that the parties can find common ground. Should you fail to either attend the meeting held on January 3, 2019 or make written request prior to December 21, 2018 for a separate date to meet with the Council, the City will proceed with the relocation of your meter once the weather permits."

29.     Donna explained why this was a bad idea, and explained legitimate concerns including not being able to afford to rent big machinery to excavate when the next old waterline breaks or buy concrete for the City since it left Donna's corner as the only unreplaced claiming it was a coincidence that the budget ran out when they got to Donna's property.  Notably Donna offered to consent to the relocation *if* they remained responsible for water lines[16] up to the property.

30.     Donna asserts, and explained that day, that it was no coincidence that only her corner was left unrepaired for the sidewalk and that under their plan they basically left Donna to be responsible for the City sidewalk that would need to be replaced when another line broke.

31.     After being demanded with presence under the threat action would be taken without Donna, and the false promise to work out a compromise on terms.  Yet when there, of course name called (again) and ZERO effort to compromise.

32.     Donna requested a decision which would trigger her time to appeal or seek a

---

[16] Known to be failing.

**Exhibit A**

TRO if they decided to move forward.

33.    After the open meeting attendance, as demanded by the City, which occured in January 2019, Donna followed up on blue stripes on the sidewalk which the City seemingly denies they did and advises that there had been no consideration of the issues presented relating to working out the "terms" as demanded by letter which sparked Donna's appearance at City Hall and request.

34.    Rather, knowing Donna would exercise those rights, they concealed their decision and Donna learned they were going to *take action the same morning they did it.*

35.    At this point, the City appeared to feel emboldened because their attorney, Lee Hendricks had already unreasonably started flexing his muscles against Donna.

   a.  Bullying Donna on relating to the Lakewood Hills District, where Donna was threatened with $100.00 per day to clean up a property *she didn't own* yet here in 2022, same property not cleaned up and nobody is going after the deep pocket owner, Fannie Mae.

   b.  Bullying Donna trying to get rid of her white storage shed despite pleasing aesthetics and trashy sheds falling down were no issue while being accused of lowering property values for Ozawkie.

   c.  Bullying Donna refusing a building permit for a concrete pad despite the greenhouse not being a permanent attachment and intent to move if we left Ozawkie while another City Attorney had advised no right to pass on the aesthetics.  After the threat not to pour, Craig Reinmuth took action as he is still steamed from being called a Nazi and no apology or any consideration that might be inappropriate.

   d.  Withing months to this even was really bullying Donna by letting his clients at Lakeshore make resolutions as if no due process were necessary and supporting the idea that despite failing to have his clients make a water claim in the estate that was pending and approved sale, and despite a clear deposit with agreement to have water connected, demanded thousands for a water meter which was never taken on paper or off the property and had passed with title to the house.

   e.  Most recent him being aware that the statute does not intend for a landlord to be responsible for a tenant's bill. KSA 12-808(c) which is read with gymnastics deciding to place Huffman, as a landlord, in the position of insurance for the City despite the clear intent of the statute not to have landlords responsible.  The

8

animus was demonstrated by calling Donna a bad landlord at this Oskaloosa meeting. [17]

36.　　On March 7, 2019, Patty Hamm emailed a "service request form" for future Kansas Open Record Acts Requests.

> "Good Afternoon. Lee Hendricks, City Attorney, has asked me to forward you aService Request Form which is to be used for open records request."

Requiring the document is contrary to KORA.

37.　　The same correspondence also declared paper copies at 35 cents per page, also excessive under KORA which is a presumptive 25 cents per page that the City or their Attorney also ignores.

38.　　There is no dispute that prior to the move the City was responsible up to the building.  City "access" was pretextual as there is no need when it works to be there and there was never a time that the City was sued for a mere water leak on an old line although they did and still charge extra sewer when such purportedly occurs[18].

**NOTHING WAS DONE TO STOP WATER IN THE BASEMENT**

39.　　If a waterline breaks under the street or sidewalk, 303 and /or 301 will still have water in the basement although the description to the Historical Society misleads one to indicate this is why there is a change which was knowingly false and included to mislead by design.

**DESPERATE BEGGING**

40.　　On the afternoon of September 30, 2019, Mr. Heard taped a letter to the door what stated they would be doing the work on October 1, 2019, the next day, which was also

---

[17] Undoubtedly the subject of future litigation as the next time the City lets a renter go $800.00 back, if they can't find a source they announce they will "collect" from Donna in the notice.  Certainly too, they will not provide water at 301 and 303 Jefferson.  Such will then leave families homeless and/or create an interference in contract etc.  Mr. Hendrick's strong arming is too stressful and must stop.

[18] Claim -- collecting unexplained thousands as if there was a leak when NO LEAK was at any apartment or otherwise. The only reasonable explanation given the investigation is that the City actually decided to charge as they had threatened and just called it water and sewer.

Exhibit A

likely to be done prior to Donna being aware because they were very aware there were not office hours being kept regularly.

41.     Plaintiff confirmed, prior to filing the suit, that the work on 303 Jefferson was in fact done on October 1, 2019. [19]

42.     Learning the City ignored any notice requirements and rejected the most reasonable solution that could have been reached, they then concealed the decision which is perfectly consistent with this idea that Mr. Hendricks has that after he gives advice it is not reviewable, those decisions are FINAL.

43.      On October 1, 2019 when the digging was brought to Donna's attention, Ms. ***Jones stated that the Historical Society was unaware "new holes" were being dug.***  In fact, the City had not disclosed the past damage to the building they caused about 10 years prior.

44.     Plaintiff was forced to beg Bill who of course giggled and delighted in digging anyway while Plaintiff desperately tried to protect my property.

45.     The Historical Preservation Office said the City would be responsible for damages, the City ignores this similar to not providing any decision on the "terms" being discussed also depriving Donna of a decision.[20]

46.     On and after the October 1, 2019 meter change, Hendricks began calls to the Historic Society and obtained a second letter saying the project was not objectionable on October 3, 2019. [21]

**FROZEN PIPES**[22]

47.     The City being more interested in getting their way and putting Donna in her

---

[20] Due Process intended under the KS Tort Act in a later amendment.  In this Petition only a KCPA violation alleged.
[21] The information provided was inaccurate and just a CYA attempt by the City who charged forward without regard to Donna or the Buildings.
[22] The tort action will be included after the waiting period when the petition is amended.

Exhibit A

place (under their heels while they grind), of course did not take any care and used pinching old pipes rather than shutting all water off and didn't bother to even cover the pipes apparently.

48.      Winter 2021 comes and of course the pipes at 303 Jefferson are frozen because they are out of the ground.  On that Friday, **February 16, 2021**, the 2 tenants call and Bill Heard comes to look into the hole which the pipe was exposed and as the water is spraying while Donna is thawing out with hairdryer.   Mr. Heard is doing what I anticipated, trying to see WHAT SIDE of the meter the pipe is broken on, despite him failing to cover the pipes which had never been exposed.

49.      This entire scenario was created as a power trip to put Donna in her place, total disregard due to animus and /or to get Donna to pay to replace City sidewalks. [23]

**MITIGATION**

50.      Donna spent her Friday night and weekend nursing pipes because when the water wasn't running it started a chain reaction.  The City workers left without even putting a "blanket" or cover on leaving Donna with the efforts and the bill which would be avoided but for their games.

51.      Had Donna not found assistance after hours on the weekend and took the prompt steps in mitigation, while the City was off warm at home not dealing with the situation and damaged they caused, the meter would have burst with water flowing freely until further damage of more frozen pipes and broken spots.

52.      Upon information and belief, the meter was damaged[24], and or the pipe coming out of the meter was broken during the freeze event.  This was or should have been known to the City of Oskaloosa.    Given the temperatures near in time to the freezing at 303 Jefferson

---

Injunctive Relief / Declaratory Judgment requested.
[24] Frozen beyond repair.

11

**Exhibit A**

yet, despite the *active break* at 303 Jefferson that bill strangely remained normal yet 301 Jefferson which had no known break had unexplainable readings of usage as 70,000 then 51,000, then 35,000, then 15,000 before normal usage was returned[25].

53.     At 301 Jefferson, unlike 303, the basement was not flooded as it had always been when a pipe broke, every apartment was checked and no explanation was ever given by the City.

54.     The City refused to make any adjustment to the bill and charged $1,083.91, then $799.94, then $550.97, then $250.86 before returning to more normal levels while 303 Jefferson, the location of broken pipes remained between 2,000 and 3,000 gallons.

55.     After returning to Kansas and checking each residence and with the tenants, and checking 301 Jefferson, Donna also met the City for this "mystery".

## CONCEALMENT OF METER READINGS ON THE "AUDIT"

56.     Although requesting the records for both buildings, the "audit" the City provided failed to have, and concealed, the meter readings.

57.     Upon information and belief, the AUDIT and records have the meter readings available which were concealed in favor for round gallons.

58.     The City refused to adjust the bill without "proof" the water did not go through the sewer which they conceded was impossible.   Huffman's only option would be to take up the sidewalk to examine the pipe which would be more costly than paying the inflated bill.

59.     For all conduct, Plaintiff alleges the conduct was; known or should have been known, willful, intentional, reckless, wanton, and without regard to the Plaintiff, damage to property, and without regard to the rights of Plaintiff and obligation of the Defendant.

---

[25] Donna was not sent a bill for moving as was stated in the letters, absent any reasonable explanation for the water difference, the next most probable event was padding the bill to force paying for the move that Donna objected to.

Exhibit A

60.     The City of Oskaloosa engaged in deceptive acts and unconscionable acts and practices relating to the Plaintiff, the properties, and necessary water services.

61.     Water should be judicially noticed as an essential service.

62.     The conduct herein described is a violation of each or any of the following[26]:

KSA 50-626(b)(1)(A) Property or services have, approval, characteristics, uses, benefits or quantities that they do not have;

KSA 50-626(b)(1)(B), the supplier has approval that the supplier does not have;

KSA 50-626(b)(1)(D), property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;

KSA 50-626(b)(1)(F), property or services has uses, benefits or characteristics;

KSA 50-626(b) (2)   the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;

KSA 50-626(b) (3)   the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact;

KSA 50-626(b) (4)   disparaging the property, services or business of another by making, knowingly or with reason to know, false or misleading representations of material facts;

KSA 50-626(b) (8)   falsely stating, knowingly or with reason to know, that a consumer transaction involves consumer rights, remedies or obligations;

KSA 50-626(b) (9)   falsely stating, knowingly or with reason to know, that services, replacements or repairs are needed;

63.     Each act, and/or the totality of the conduct, by Defendant was deceptive, misleading, willful, wanton, unconscionable, and self-dealing for their own financial benefit. At all times the City acted knowingly stating what they knew or should have known was misrepresented hat they knew or should have known and/or were willful with the conduct or lack

---

[26] For each statute number, descriptors that are irrelevant are omitted to provide more accurate notice therefore, the statute number and letter is longer and more expansive than Plaintiff's claims are asserted herein.

Exhibit A

of conduct was deceptive, misleading, willful, wanton, unconscionable, and self-dealing for their own financial benefit, and with unbalance if any bargaining power to secure an agreement.[27]

64. Such conduct as set out herein and to be supplemented later is unconscionable.

65.     Violation of KSA 50-627(b)(1). The supplier took advantage of the inability of the Donna to reasonably to protect her interests because of the reliance on Defendant to be honest in dealings relating to water, agreements, rights, and obligations particularly when setting up false narratives to achieve goals then never even taking the "terms" to meeting or providing Donna notice.

Defendant violated KSA 50-627(b)(3) as Plaintiff was unable to receive a material benefit from the subject of the transaction of moving the water meters.[28]

Defendant violated KSA 50-627(b)(5) the transaction the supplier tried to induce the Plaintiff to enter into **was excessively onesided in favor of the supplier**; such as increasing responsibility and liability to Plaintiff while on water lines while eliminating responsibility for the City.

KSA 50-627(b)(6) the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment; such as the level of privacy and scope of the interactions.

KSA 50-627(b)(7) the water supplier attempted to exclude or limit warranty by assigning such a small time for the move of the meter as to be even less than implied warranties and other law.

65.     The above and foregoing violates, or attempted to violate KSA 50-625, in attempting to demand the illusory agreement forcing Plaintiff to take additional obligation and forego benefits of the meter being within the building when moving to make Plaintiff then responsible under the sidewalk and/or in the street.

## ENHANCED PENALTIES

66.     Donna is a disabled consumer as a result of an automobile accident on June 24,

---

[27] KSA 50-627 and KSA 50-625
[28] Similarly, the City would benefit from new sidewalks when the repeat of 2018 occurs.

14

**Exhibit A**

2011.

67.     As such, the KCPA provides for enhanced penalties up to $20,000[29] per act.

## COUNT 2

## BREACH of CONTRACT

68.     The foregoing is included by reference as though fully set forth herein.

69.     The City of Oskaloosa is in two water contracts with Plaintiff or her business entities.

70.     Among other things, the contracts require accurate water usage readings to obtain a proper billing amount and require the proper maintenance of lines and meters for example.

71.     The City breached both contracts.

72.     Damages in an undetermined amount include the inflated charges above, for example.  These will be set forth in more certainty after a discovery period.

## RESPONDEAT SUPERIOR

The acts of the employees, officers, and agents, are imputed to the Defendant under the theory of Respondeat Superior as at the point of notice pleading without discovery the actual capacity, decisions, and responsibility of each cannot be ascertained.  Should Defendant interplead their employee, Plaintiff shall join in the same.

## RESERVATION TO AMEND AND ASSERT ADDITIONAL CLAIMS/RELATAE BACK

Various claims that may be discovered or result in being ripe after filing of this petition, such as under the Kansas Tort Claims Act are anticipated.

**WHEREFORE** Plaintiff, based upon the above and foregoing, and as may be further supplemented, orally or in writing, pray that this Honorable Court:

(1).     Grant the petition in whole;

---

[29] Up to $10,000 for KCPA, doubled for disabled consumers for up to an additional $10,000 per act.

Exhibit A

(2)     Award pecuniary damages for losses, in an amount to be determined after

further discovery;

(3).    Award statutory penalties up to an amount of $10,000 per act.

(4).    Award enhanced penalties up to an additional $10,000 per act as to Donna as in

the statutory category of disabled.


(5).    Award expenses and interest in the form and amount allowed by statute and other

law.

(6) Other relief as is deemed equitable, just, and proper under the facts and the

law in an amount that exceeds $75,000.

(7) Declaratory and Injunctive relief for future water bills, readings, responsibility

relating to the water lines and locations, compliance with KORA and  other relief that may be

deemed just and proper.

**TRIAL BY JURY DEMANDED**

Respectfully submitted,

By:/ s/ Donna L. Huffman
        PO Box 1, 303 Jefferson Street
        Oskaloosa, KS 66066
        Ph: (785) 840-5259
        Fax: (785) 876-2105
        **PLAINTIFF PRO SE**

Exhibit A

## IN THE DISTRICT COURT OF JEFFERSON COUNTY KANSAS

Donna Huffman,
          Plaintiff,

2022 OCT 21 PM 2:36
JEFFERSON CO DIST

vs.                          Case No. 22 cv 64

The City of Oskaloosa Kansas,
          Defendant.

---

### PRECIPE FOR SUBPOENAS

        COMES NOW, Counsel, Donna Huffman, requesting the Clerk of the Jefferson

County District Court issue 1 summons in the above captioned matter for agreed service upon

the City Clerk in person.

                                       **Respectfully Submitted,**

                                       Donna L. Huffman
                                       Plaintiff
                                       P.O. Box 1, 303 Jefferson Street
                                       Oskaloosa, Kansas 66066
                                       Ph:  (785) 840-5259
                                       donna@thetruthmatters.online

1

## IN THE DISTRICT COURT OF JEFFERSON COUNTY KANSAS

Donna Huffman,
              Plaintiff,

2022 OCT 21 PM 3:01
JEFFERSON CO DIST

vs.                           Case No. 22 cv 64

The City of Oskaloosa Kansas,
              Defendant.

---

### RETURN of SERVICE

        COMES NOW, Donna Huffman, noticing the Court of Service upon Patty Hamm, City Clerk of Oskaloosa Kansas who received personal service on 10-21-2022 at 2:47 p.m. as attached.

                                **Respectfully Submitted**,

Donna L. Huffman
Plaintiff
P.O. Box 1, 303 Jefferson Street
Oskaloosa, Kansas 66066
Ph:   (785) 840-5259
donna@thetruthmatters.online

1

**Exhibit A**



D___ ___uffman, Plaintiff

vs.            22cv64

The City of Oskaloosa Kansas
Defendant.

Received
10-21-22
2:47pm

2022 OCT 21 PM 2:37
JEFFERSON CO DIST C

### SUMMONS

To the following named Defendant:

        The City of Oskaloosa Kansas.
        AGENT:  Patty Hamm, City Clerk
        Address: 212 W Washington St., Oskaloosa KS 66066

You are hereby notified that an action has been commenced against you in this court.

You are required to file your answer or motion under K.S.A. 60-212, and

amendments thereto, to the petition with the court and to serve a copy upon:

        Donna L
        Huffman PO
        Box 1
        303 Jefferson

        Oskaloosa, KS 66066

within 21 days after service of summons on you.

### BY THE AUTHORIY OF THE DISTRICT COURT

Cindy Whi___

**Exhibit A**

Donna Huffman, Plaintiff

vs.        22cv64

The City of Oskaloosa Kansas
Defendant.

## SUMMONS

2022 OCT 21 PM2:37
JEFFERSON CO DIST (

To the following named Defendant:

> The City of Oskaloosa Kansas.
> AGENT:  Patty Hamm, City Clerk
> Address: 212 W Washington St., Oskaloosa KS 66066

You are hereby notified that an action has been commenced against you in this court.

You are required to file your answer or motion under K.S.A. 60-212, and

amendments thereto, to the petition with the court and to serve a copy upon:

> Donna L
> Huffman PO
> Box 1
> 303 Jefferson
>
> Oskaloosa, KS 66066

within 21 days after service of summons on you.

## BY THE AUTHORIY OF THE DISTRICT COURT

*Cindy Wheeler*



**Exhibit A**

ELECTRONICALLY FILED
2022 Nov 14 AM 11:16
CLERK OF THE JEFFERSON COUNTY DISTRICT COURT
CASE NUMBER:  JF-2022-CV-000064
PII COMPLIANT



**Court:**            Jefferson County District Court

**Case Number:**     JF-2022-CV-000064

**Case Title:**      DONNA L HUFFMAN   vs. City of Oskaloosa

**Type:**            Clerk's 14-Day Extension

SO ORDERED.

/s/ Bria Lorenz, Deputy Clerk

Electronically signed on 2022-11-14 11:15:56     page 1 of 3

**Exhibit A**

**IN THE DISTRICT COURT OF JEFFERSON COUNTY, KANSAS**

| | |
|---|---|
| DONNA HUFFMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Case No. JF-2022-CV-000064 |
| | ) |
| CITY OF OSKALOOSA, KANSAS, | ) |
| | ) |
| Defendant. | ) |

## <u>CLERKS 14 DAY EXTENSION</u>

Upon the timely application of Defendant City of Oskaloosa, Kansas ("City") and pursuant to the authority vested in the Clerk of the Court by Supreme Court Rule 113, the initial time to plead to Plaintiff's Petition, which was served on Defendant October 21, 2022 is hereby extended fourteen (14) days from November 11, 2022, to **November 25, 2022.**   The original time to answer has not expired.

**Dated: _____**

_____
**CLERK OF THE DISTRICT COURT**

Respectfully submitted,

FISHER, PATTERSON, SAYLER & SMITH, LLP

 /s/Andrew D. Holder
_____
Andrew D. Holder                    KS #25456
9393 W. 110th St., Suite 300
Overland Park, Kansas 66210
(913) 339-6757; Fax: (913) 660-7919
aholder@fpsslaw.com
**ATTORNEY FOR DEFENDANT**
**CITY OF OSKALOOSA, KANSAS**

**Exhibit A**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 11th day of November, 2022, I electronically filed the foregoing with the Court and that an electronic notice of filing and a copy of the foregoing will automatically be sent to:

Donna Huffman
PO Box 1
303 Jefferson Street,
Oskaloosa KS 66066
(785) 840-5259 Phone
(785) 876-2105 Fax
donna@thetruthmatters.online
**PRO SE PLAINTIFF**

  /s/Andrew D. Holder
Andrew D. Holder, #25456

{O0371259}

**Exhibit A**

ELECTRONICALLY FILED
2022 Nov 28 PM 4:49
CLERK OF THE JEFFERSON COUNTY DISTRICT COURT
CASE NUMBER:  JF-2022-CV-000064
PII COMPLIANT

**IN THE DISTRICT COURT OF JEFFERSON COUNTY, KANSAS**

DONNA HUFFMAN,                                     )
                                                   )
                          Plaintiff,               )
                                                   )
v.                                                 )          Case No. JF-2022-CV-000064
                                                   )
CITY OF OSKALOOSA, KANSAS,                         )
                                                   )
                          Defendant.               )

## ANSWER

Defendant, the City of Oskaloosa, Kansas, respond to Plaintiff's Petition as follows:

1. All allegations of the Petition not specifically admitted herein are denied.

2. Plaintiff's First ¶ 1 is admitted.

3. In response to Plaintiff's First ¶ 2, Defendant admits that it is a Kansas municipality located in Jefferson County, Kansas, and may be served through its city clerk.  The remaining allegations of ¶ 2 are denied.

4. Defendant lacks knowledge sufficient to admit or deny the allegations of Plaintiff's Second ¶ 1[1] and for that reason denies the same.

5. Defendant lacks knowledge sufficient to admit or deny the allegations of Plaintiff's Second ¶ 2[2] and for that reason denies the same.

6. Paragraphs 3,4, and 5 are denied.

7. Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraphs 6 and 7, or the footnote to ¶ 7, and for that reason denies the same.

8. Paragraph 8 is denied.

---

[1]The Petition includes two paragraphs numbered "1"  This response is directed at the allegation beginning, "Plaintiff purchased 30 Jefferson . . . ."
[2]The Petition includes two paragraphs numbered "2"  This response is directed at the allegation beginning, "In or about 2003 . . . ."

**Exhibit A**

9.  Paragraph 9, and its footnotes, are denied.

10. In response to ¶ 10, Defendant admits that at some point, Defendant began the process of relocating its water meters so that, *inter alia*, entry into the property was no longer necessary.  The remainder of ¶ 10 is denied.

11. Defendant lacks knowledge sufficient to admit or deny the allegations of ¶¶ 11, 12 and for that reason denies the same.

12. In response to ¶ 13, Defendant admits that a leak occurred in 2018.  Defendant lacks knowledge sufficient to admit or deny the allegations of ¶ 13 and for that reason denies the same.

13. Paragraphs 14, 15, and 16 are denied.

## COUNT I: KANSAS CONSUMER PROTECTION ACT

14. In response to ¶ 17, Defendant incorporates its response to the preceding paragraphs as though fully set forth herein.

15. Defendant lacks knowledge sufficient to admit or deny the allegations of ¶¶ 18 and 19 and for that reason denies the same.

16. In response to ¶ 20, Defendant admits that it provides water to its citizens.  The remainder of ¶ 20 is a legal conclusion and is denied on that basis.

17. Paragraph 21 is denied.

18. In response to ¶ 22, Defendants admit that at some point Defendant made the decision to move its meters from inside to outside the properties.  All allegations inconsistent with this admission are denied.

**Exhibit A**

19. In response to ¶ 23, Defendant admits discussing the meter relocation issue with Plaintiff and that Plaintiff expressed her opposition to relocating the meter.  The remaining allegations of ¶ 23 are denied.

20. In response to Plaintiff's First ¶ 24, Defendant admits sending a letter to Plaintiff requesting that she sign an agreement consenting to relocation of her meter.  The remaining allegations of ¶ 24 are denied.

21. To the extent Plaintiff's First ¶ 25 purports to quote from a letter from Defendant to Plaintiff, Defendant responds that the document speaks for itself.  The remaining allegations of ¶ 25 are denied.

22. Plaintiff's Second ¶ 24[3] is denied.

23. In response to Plaintiff's Second ¶ 25,[4] Defendant responds that to the extent ¶ 25 purports to quote from a letter from Defendant, the document speaks for itself.  The remaining allegations of Plaintiff's Second ¶ 25 are denied.

24. Paragraphs 26 and 27 are denied.

25. In response to ¶ 28, Defendant responds that to the extent ¶ 28 purports to quote from a letter from Defendant to Plaintiff, the document speaks for itself.  The remaining allegations of ¶ 28 are denied.

26. In response to ¶ 29, Defendant admits that Plaintiff opposed relocating her meter. Defendant lacks knowledge or information to admit or deny the allegations of ¶ 29 and for that reason denies the same.

27. Paragraph 30 is denied.

---

[3]The Petition includes two paragraphs numbered "24."  This response is directed at the allegation beginning, "Upon request to the City under KORA . . . ."
[4]The Petition includes two paragraphs numbered "25."  This response is directed at the allegation beginning, "Although the project appears . . . ."

28. Defendant lacks knowledge or information to admit or deny the allegations of ¶ 31 and for that reason denies the same.

29. Paragraph 32 is denied.

30. In response to ¶ 33, Defendant admits that Plaintiff attended a meeting regarding relocation of the water meter.  The remainder of ¶ 33 is denied.

31. Paragraph 34 is denied.

32. Paragraph 35, each of its subparts, and its footnote, are denied.

33. In response to ¶ 36, Defendant responds that to the extent ¶ 36 purports to quote from a letter from Defendant to Plaintiff, the document speaks for itself.  The remaining allegations of ¶ 36 are denied.

34. Paragraph 37 is denied.

35. Paragraph 38 and its footnote are denied.

36. Defendant lacks knowledge or information to admit or deny the allegations of ¶ 39 and for that reason denies the same.

37. In response to ¶ 40, Defendant admits that Plaintiff was notified in advance of the work done to relocate the water meter.  The remainder of ¶ 40 is denied.

38. Defendant lacks knowledge or information to admit or deny the allegations of ¶ 41 and its footnote and for that reason denies the same.

39. Paragraph 42 is denied.

40. Defendant lacks knowledge or information to admit or deny the allegations of ¶ 43 and for that reason denies the same.

41. Paragraph 44 is denied.

42. Defendant lacks knowledge or information to admit or deny the allegations of ¶ 45 and for that reason denies the same.

43. In response to ¶ 46, Defendant admits receiving notice from the Historical Society that relocation of the water meter was not objectionable.  The remainder of ¶ 46, and its footnote, are denied.

44. Paragraph 47 is denied.

45. Defendant lacks knowledge or information to admit or deny the allegations of ¶ 48 and for that reason denies the same.

46. Paragraph 49 and its footnote are denied.

47. Defendant lacks knowledge or information to admit or deny the allegations of ¶¶ 50 and 51 and for that reason denies the same.

48. Defendant lacks knowledge or information to admit or deny the allegations of ¶ 52 and for that reason denies the same.  The footnotes to ¶ 52 are denied.

49. Defendant lacks knowledge or information to admit or deny the allegations of ¶¶ 53, 54, and 55 and for that reason denies the same.

50. Paragraph 56 purports to summarize the contends of an audit provide by Defendant to Plaintiff, the contends of which speak for itself.  The allegation in ¶ 56 that Defendant "concealed" information is specifically denied.

51. Paragraphs 57, 58, 59, and 60 are denied.

52. Paragraph 61 is a legal conclusion and is denied on that basis.

53. Paragraphs 62, 63, 64, and 65 are denied.

54. Defendant lacks knowledge or information to admit or deny the allegations of ¶ 66 and for that reason denies the same.

**Exhibit A**

55. In response to ¶ 67, Defendant lacks knowledge or information to admit or deny the allegations that Plaintiff is a "disabled consumer" and therefore denies the same. The remainder of ¶ 67 is denied.

## COUNT II: BREACH OF CONTRACT

56. In response to ¶ 68, Defendant incorporates its response to the preceding paragraphs as though fully set forth herein.

57. Paragraphs 69, 70, 71, and 72 are denied.

58. Plaintiff's unnumbered "Respondeat Superior" paragraph is a legal conclusion. Accordingly, to the extent any response is required, this paragraph is denied.

59. Plaintiff's unnumbered "Reservation to Amend" paragraph is a legal conclusion. Accordingly, to the extent any response is required, this paragraph is denied.

60. Plaintiff's Prayer for Relief is denied.

## DEFENSES AND AFFIRMATIVE DEFENSES

1. Plaintiff's Petition fails to state a claim upon which relief may be granted.

2. In the event Plaintiffs are found to have been damaged or injured as alleged, which Defendants specifically deny, any negligence or fault on the part of Defendants should be reduced in accordance with the negligence or fault attributable to Plaintiffs or any non-named party who has fault pursuant to K.S.A. 60-258a.

3. To the extent applicable, Plaintiffs have failed to mitigate damages.

4. Defendant denies the existence of any contract capable of supporting a claim for breach thereof.

5. Plaintiff's claim is barred or limited by the Kansas Tort Claims Act, to the extent applicable.

**Exhibit A**

6.  Plaintiff's claim is barred or limited by the statute of limitations, to the extent applicable.

7.  Defendants reserve the right to assert any and all additional affirmative defenses that may be revealed through the course of discovery.

WHEREFORE, Defendants respectfully prays that Plaintiffs take nothing, and that Defendants be awarded its costs incurred in defending this action.

Respectfully submitted,

FISHER, PATTERSON, SAYLER & SMITH, LLP

 /s/Andrew D. Holder
Andrew D. Holder                    KS #25456
9393 W. 110th St., Suite 300
Overland Park, Kansas 66210
(913) 339-6757; Fax: (913) 660-7919
aholder@fpsslaw.com
**ATTORNEY FOR DEFENDANT**
**CITY OF OSKALOOSA, KANSAS**

**Exhibit A**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 28, 2022, I electronically filed the foregoing with the Court and that an electronic notice of filing and a copy of the foregoing will automatically be sent to:

Donna Huffman
PO Box 1
303 Jefferson Street,
Oskaloosa KS 66066
(785) 840-5259 Phone
(785) 876-2105 Fax
donna@thetruthmatters.online
**ATTORNEY FOR PLAINTIFF**

 /s/Andrew D. Holder
Andrew D. Holder, #25456

**Exhibit A**

ELECTRONICALLY FILED
2023 Feb 24 PM 12:38
CLERK OF THE JEFFERSON COUNTY DISTRICT COURT
CASE NUMBER:  JF-2022-CV-000064
PII COMPLIANT

## IN THE DISTRICT COURT OF JEFFERSON COUNTY, KANSAS

Donna L. Huffman,

                    Plaintiff,

             vs.                            Case No.  22 cv 64

City of Oskaloosa,

                    Defendant.

---

### AMENDED PETITION

      **COME NOW**, the Plaintiff with an Amended Petition by interlineation for additional Counts by consent in accordance with the case management status for her cause of action to recover damage and statuary penalties as follows.  The Petition on file August 15, 2022 is incorporated by reference as arising from the same or similar set of facts and controversy now ripe by the expiration of the demand under the Torts Claim Act with no response or offer from the City.

### COUNT 3 – TORTS[1]

### KSA § 75 -6101 *et seq.*

### Negligence, Fraud[2], Tortious Interference with Contract, and Outrage

    73.   The Kansas Torts Claim Act is applicable to acts and omissions including a city municipality which is covered by, and may not exempt themselves from, K.S.A. §75-6101 (b), (c).

---

[1] The 2010 petition against the City of Oskaloosa is incorporated by reference for knowledge of duties, for acts, for animus, and as to otherwise provide facts and previous settlement to be enforced in good faith.

[2] All reasonably foreseeable torts including Constructive Fraud and Fraud By Silence

**Exhibit A**

74.     The City of Oskaloosa has not tendered a response or offer relating to the damages and conduct therefore, the additional claims are ripe to be brought to this Court for adjudication as the notice has been satisfied.

75.     Historic property maintenance and preservation is one of the highest priorities of government[3].

76.     A municipality or other government body shall not undertake any project that will damage any historic property and has the duty to refrain from such acts.

77.     The duty arises as to any act within 500-1000 feet of the historic property.

78.     The duty was breached when, among other facts in the petition already pled, engaging in moving the water meters from the interior of the building failing to have any plan or specifications to two new hole dug in the street and sidewalk which left water pipes exposed.

79.     The breach of the duty of honesty to the Historical Society in providing false and/or misleading information such as, for example, "no new holes" and the impression the meters being moved was to correct or protect the historic property from basement flooding despite knowing the same was untrue.

80.     The representations and omissions were intentionally and/or recklessly made for the purpose of inducing the historical officer to act of which such officer did reasonably rely upon them and acted upon them.

    a.   For example, the use of no new holes, which was understood by the Officer to be no new holes (such as digging) although *after* the project was completed Lee Hendricks indicated he meant no new holes into the building and further falsely indicated that was the concern of the building owner which was never the issue and only arose after Bill Heard was digging the hole because the opposition of the property owner was omitted in total initially.

---

[3] KSA 75-2715

      b.  Huffman was promised an effort to compromise which brought her to the City meeting as commanded and reasonably relied on the representation that no decision had been made then was never served with any document of the decision which damaged her in the area of time and judicial review of the body.  Huffman reasonably relied some notice would be given yet it was posted on her door, not even emailed, less than 24 hours before digging.

81.    The Defendant knew the contract with Plaintiff required them to maintain responsibility for repair of the water lines up to the meter, stated another way, under the City streets and sidewalks.   The Defendant also knows those pipes are old and have been failing.

82.    Defendant undertook to interfere with the contract relating to the water services to the building and tenants thereof to cause damage to Huffman to make her responsible for the street and sidewalk in wanton and malicious fashions from designing the plan to crafting the threat to sign a new agreement, limiting the warranty of the work to a mere 120 day period, threatening to charge Donna and Craig for the unnecessary work if they did not sign the extortion agreement, including all other facts and inferences as well as standing over the meter in hopes the break was on "Donna's side" and leaving her to deal with a burst meter and pipe at the new hole in the sidewalk and inside the building with such wanton disregard as to offer no assistance, make no remediation or mitigation efforts, and upon demand making *no offer* (ZERO dollars) all of which necessitated the suit.

83.    The relocation project caused property and pecuniary damage to the historic property by, among other things, causing the old pipes to be exposed without any "blanket" or cover which then resulted in freezing of the meter and subsequent pipe freezing for lack of water movement within the historic property.

Exhibit A

**CONSTITUTIONAL CLAIMS**

84.     Due process requires a reasonable time and reasonable manner along with a right to review an administrative body's decision.

85.     As the other claims, the facts are incorporated by reference, including the less than 24 hours notice which is not a reasonable time, deprived Plaintiff of her right to review.

86.     The concealments, misleading statements, and inference that the project was undertaken as if to stop flooding in the basements in addition to other untrue statements were not a reasonable manner.

87.     All of which came together to let bully conduct win without any reasonable purpose and then to deprive of property

88.     The conduct, herein described, also results in an unconstitutional taking by creating an (1) economic impact on the property owner to be responsible for the city sidewalk and street shifting the burden of the old city water pipes upon Donna and Craig which (2) interfere with the investment expectations of the property as foreseeably reducing the rent profits by repair and maintenance of the City waterworks in what they describe as "their easement", (3) which was done with deceptive acts including efforts to threaten, extort an agreement, and impose other financial obligations without regard to the rights of the Plaintiff and the statutory protections for the historic property.

89.     As such, the Defendant has violated the Equal Protection Clause in that this government actor has deprived Plaintiff of liberty and property without due process and within the jurisdiction of the City also deprived Plaintiff of the equal protection of the laws of her property and decisions relating to the property when depriving review.

4

90.    The City knew or should have known Huffman would seek review and as such decided to take unilateral action with no chance to be reviewed as until the decision was made no action was ripe for review therefore, the decision was concealed.

91.    The conduct of risking the Plaintiff's buildings, particularly when knowing she was injured from an automobile accident and was not regularly engaged in work from the location was so extreme as to be outrageous when combined with these facts.

92.    The conduct of Defendant and their agents was intentional and/or in reckless disregard for Plaintiff.

93.    The Defendant's conduct caused Plaintiff extreme and severe distress.

94.    The animus is so open and pervasive as to disregard Plaintiff's rights which is intolerable in civilized society as codified in our laws to protect citizens from this type of overreaching conduct which also disregarded Plaintiff's rights in all measure of fairness, honest dealings with the government, liberty to make decisions and have financial expectancy from investments (such as these building used in rental income for example), and property.

**WHEREFORE**, the Plaintiffs based upon the above and foregoing, and as may be further supplemented, orally or in writing, pray that this Honorable Court in addition to relief already requested order

        (8). Provide injunctive relief for the citizens of Oskaloosa in that the City must provide reasonable notice and opportunity for review for any decision of which a property owner is aggrieved and other policies relating to the documentation required in water billing such as the exact meter reading;

        (9). Order the City of Oskaloosa to use the interior meters and resume responsibility for the water lines;

        (10). Order the City of Oskaloosa to fill the holes to avoid freezing;

**Exhibit A**

(11) Provide instructions to the jury to find an amount of compensation for deprivation of these civil liberties and other acts in an amount exceeding $75,000;

(12) Plaintiffs to be aggrieved consumer and award the statutory penalty and enhanced penalty for *each* separate act, statement, or practice in violation of the Kansas Consumer Protection Act as to Molly at $10,000 per act or per day in this Court's discretion and for Rosemary at $20,000 per act and or per day;

(13)  Order attorney fees and expenses relating to the assistance in obtaining information and in this action;

(14).  Order such other relief as is deemed equitable, just, and proper under the circumstances.

**Respectfully Submitted,**

/s/ Donna L. Huffman

_____

Donna L. Huffman
PRO SE
PO Box 33
Ozawkie, KS 66070
Ph:   (785) 840-5259
donna@thetruthmatters.online

CERTIFICATE of SERVICE

On this 24th day of February, 2023, undersigned certifies that she served the Amended Petition to Opposing Counsel as agreed in the case management conference by email to:

aholder@fpsslaw.com

and paralegal:

mrenk@fpsslaw.com

_____

Donna L. Huffman

**Exhibit A**

## IN THE DISTRICT COURT OF JEFFERSON COUNTY, KANSAS

| | | |
|---|---|---|
| Donna Huffman, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. JF-2022-CV-64 |
| | ) | Civil |
| City of Oskaloosa Kansas, | ) | |
| Defendant. | ) | 2022 AUG 15 PM 3:17 |
| | | JEFFERSON CO DIST ( |

### PETITION

**COMES NOW** Plaintiff Donna Huffman for recovery of statutory penalties[1] caused by the Defendant for their actions and non-actions.

### JURISDICTION & VENUE

1.  Plaintiff is and has been, at all relevant times, been a citizen of the State of Kansas residing in Jefferson County Kansas.

2.  The City of Oskaloosa is a municipality in Jefferson County Kansas who is being served through the City Clerk, Patty Hamm[2].

   The City of Oskaloosa, through employees and members of the Council, have long held animus towards Donna Huffman, particularly after Donna was prevailing party relating to the same property being damaged and their conduct thereafter.   Because of this history, the longstanding staff take unreasonable positions which disregard her personal and property rights despite being the owner of the flagship building in Oskaloosa, Union Block[3], commonly known as 301 and 303 Jefferson.

### FACTS[4]

---

[1] Plaintiff puts the City on Notice of Torts Claim Act liability by letter and will file separately at expiration of the time then consolidate or will amend to include claims and damages.
[2] KSA 60-304(d)
[3] Built in 1892 and upon the historic register.
[4] The facts will be supplemented as discovery progresses.

Exhibit A

1.      Plaintiff purchased 301 Jefferson Street in Oskaloosa Kansas for her business and personal use in January 2000.

2.      In or about 2003, Plaintiff gained an interest then purchased 303 Jefferson St. in Oskaloosa, Kansas by virtue of purchased 303 Jefferson Street.

3.      In the Spring of 2010, the City of Oskaloosa began replacing gas lines. During the construction, they failed to take necessary precautions regarding the historic building and ultimately damaged the two properties then, through Bill Heard, engaged in an offensive cover up.[5]

4.      Not only had the destruction of the cistern occurred, but upon information and belief Bill Heard concealed the damage from Huffman.

5.      *No communication was ever provided* from the City of this damage.

6.      Additionally, Huffman learned that the City of Oskaloosa had also unilaterally taken previous action which eliminated the benefit of the sump pump in 301 Jefferson by modifications outside the building, cutting and cementing closed the pipe/drain from the outside, also concealed.

7.      Plaintiff was prevailing party[6].  Various repairs were made and the City agreed to keep the alley grade in a manner runoff was not an issue, for example.

8.      City Attorney Mike Hayes had previously assisted these parties in resolving issues and had ushered in an era of peace which lasted about 6 years.  Being familiar with the animus suggested to Huffman, and the City, that they buy her

---

[5] Petition in Wyandotte County Kansas.  Incorporated by reference.
[6] City Attorney Mike Hayes was familiar with the animus and even suggested to Huffman, and the City, that they buy her buildings and use for offices prior to him leaving office.  He had previously assisted these parties in resolving issues and had ushered in an era of peace.

**Exhibit A**

buildings and use for offices prior to him leaving office.  He had previously assisted

9.      As a matter of history that relates to the retaliatory conduct in the last suit,

the City of Oskaloosa Kansas had a long history of issues relating to estimated bills

which would be estimated at minimums for multiple then a few months later a large

usage would be recorded which deprived Huffman's business and other Oskaloosa

residents the accurate billing.   (For example, mailing low estimated bills for 2-3

months on an amount UNDER the number of gallons that is included in the base price,

then doing a reading charging more as if the usage was in the month of the reading

when the total would have been in the included or near base price range.)

ILLUSTRATION[7]

($M$[8]1, estimate lower than total allowed at base rate)
+M2, estimate lower than total allowed at base rate)
+M3, estimate lower than total allowed at base rate)

M4 – actual reading which triggers overuse charges despite dividing the 4
months the total would have been at or near the total amount and no
overuse charges or low overuse charges.

Such incentives the City monetarily for failing to perform the required minimum function

of reading  the meters accurately and within time.[9]

10.      At a point, near in time to the estimated bills, the parties agreed that the

City of Oskaloosa would change the meters in the basement buildings for electronic

readings which no longer required entry into the property.

---

[7] To visualize the statement above, but not tied to any specific month.  Also based on current posting rates rather than
tied to the historical which will be a subject of discovery.
[8] M= Month
[9] IF the City were to need to estimate then it should be required to provide the *payor the full minimum usage*.

3

Exhibit A

11.     **At all relevant times, those newer water meters were working fine.**

12.     As happens with older city works, leaks would occur outside of the building and require repair.

13.     One such a leak occurred in October of 2018 which required the City to close the sidewalk and open the street for repair near 303 Jefferson Street.

14.     Without the guidance of Mike Hayes the City began reverting to the old ways and, for example, decided to redo sidewalks and corners all around the square EXCEPT in front of the flagship building which is Donna's property.

15.     Although Mr. Heard was advised by Donna and Craig that they objected to moving the meters with rationale, the City proceeded to flex their power without regard to the expense and risk of Donna.

16.     Despite knowing that the City was responsible for the water lines going up to the water meters, which were in the basements of the buildings, and despite knowing the lines break outside of the building, the City decided to unilaterally change the rights and obligations of Donna Huffman through a series of concealments and misrepresentations which, among other things, violated the Kansas Consumer Protection Act.

## COUNT 1 –
## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
### (KSA 50-623 *et seq.*)

17.     The foregoing facts are incorporated by reference as though fully stated herein.

4

**Exhibit A**

18.     Donna Huffman is a consumer[10] as an individual[11], who sought and acquired water, and the services therewith, for personal, family, household, and business purposes  at 301 Jefferson Street, Oskaloosa, KS 66066.

19.     Donna Huffman is a consumer[12] as an individual[13], who sought and acquired water, and the services therewith, for personal, family, household, and business purposes  at 303 Jefferson Street, Oskaloosa, KS 66066.

20.     The City of Oskaloosa is a supplier of water and water services as a manufacturer, distributor, seller,[14] or other person[15], who in the ordinary course of business distributes, supplies, and sells water to both 301 and 303 Jefferson Street, Oskaloosa, KS 66066.

21.     Plaintiff is aggrieved, for example, by the untruth in dealings which were contrary than represented, unilateral change of her rights and obligations, exercised overreach with no bargaining power, and other conduct that also resulted in foreseeable pecuniary damages.

22.     At some unknown point, believed to be in late 2018, the City decided to move the newer, working, electronically read meters from 301 Jefferson Street to the street and 303 Jefferson Street to the sidewalk.

23.     The City then began discussing meter relocation with Donna and Craig who explained that the change was not acceptable for reasons that included the change in the obligation for repair under the sidewalk and in the street and concerns over the City digging

---

[10] KSA 50-624(b)
[11] Alternatively as a family partnership at times.
[12] KSA 50-624(b)
[13] Alternatively as a sole proprietor at times.
[14] Kansas Statute providing City the power to sell water.  KSA 12-808
[15] Person expressly includes the "government", "government subdivision", and/or "agency".

Exhibit A

too close to the building as nothing needed repair or should be disturbed.

24.     At some time thereafter, the City began sending letters requesting that Huffman (and her husband) sign an agreement to allow the move the water meters.

## DECEPTION RELATING TO THE "AGREEMENT" SIGNATURE DEMANDS

25.     Letters came and were recirculated that were designed to and were advancing a false impression that this meter move was going all around the square.

> **"All other businesses around the downtown square have completed their agreements and yours remains the only outstanding agreements."**

Despite doing a reasonable investigation, other businesses were not presented with agreements nor did their meters get moved.

24. Upon request to the City under KORA, *no other signed agreements* from other business around the square were sent back to Huffman.

## CONCEALMENT EXAMPLE

25.     Although the project appears to have involved only Huffman's buildings, Huffman *was not copied on any communication to the Historical Society* which was later discovered to have received a letter which implied the move was to help with water leaking into the basements of 301 and 303 Jefferson.

> "The water meters are currently located in the basement of these properties (301 & 303 Jefferson) at time causing leaking and flooding in the basement. The City plans to relocate the meters to the street or sidewalk of the buildings.  The meters should be underground or covered and not alter the aesthetics of the property.  No new holes will need to be cut…"

## THE THREAT

26.     The City of Oskaloosa also threatened if the "agreement" wasn't signed that the move would happen anyway and the cost of the move would be collected from Huffman.

## UNFAIR LIMIT ON WARRANTY

27.     The City of Oskaloosa also demanded an equivalent to a no consideration hold

**Exhibit A**

harmless for the forced meter move declaring essentially no warranty of the work they stated would happen with or without the agreement.

**DEMAND FOR APPEARANCE**

28.     The City demanded that Plaintiff sign the agreement or attend the meeting to discuss terms.

> "While your request was not in writing as required by the letter dated November 30, 2018, I will assume that you are not interested in signing the agreement and will instead be attending the meeting to discuss its terms. I want to make it clear that the November 30, 2018 letter provided you with two options: signing the agreement or attending a Council meeting to discuss this relocation in the hopes that the parties can find common ground. Should you fail to either attend the meeting held on January 3, 2019 or make written request prior to December 21, 2018 for a separate date to meet with the Council, the City will proceed with the relocation of your meter once the weather permits."

29.     Donna explained why this was a bad idea, and explained legitimate concerns including not being able to afford to rent big machinery to excavate when the next old waterline breaks or buy concrete for the City since it left Donna's corner as the only unreplaced claiming it was a coincidence that the budget ran out when they got to Donna's property.  Notably Donna offered to consent to the relocation *if* they remained responsible for water lines[16] up to the property.

30.     Donna asserts, and explained that day, that it was no coincidence that only her corner was left unrepaired for the sidewalk and that under their plan they basically left Donna to be responsible for the City sidewalk that would need to be replaced when another line broke.

31.     After being demanded with presence under the threat action would be taken without Donna, and the false promise to work out a compromise on terms.  Yet when there, of course name called (again) and ZERO effort to compromise.

32.     Donna requested a decision which would trigger her time to appeal or seek a

---

[16] Known to be failing.

7

**Exhibit A**

TRO if they decided to move forward.

33.     After the open meeting attendance, as demanded by the City, which occured in January 2019, Donna followed up on blue stripes on the sidewalk which the City seemingly denies they did and advises that there had been no consideration of the issues presented relating to working out the "terms" as demanded by letter which sparked Donna's appearance at City Hall and request.

34.     Rather, knowing Donna would exercise those rights, they concealed their decision and Donna learned they were going to **_take action the same morning they did it._**

35.     At this point, the City appeared to feel emboldened because their attorney, Lee Hendricks had already unreasonably started flexing his muscles against Donna.

    a.   Bullying Donna on relating to the Lakewood Hills District, where Donna was threatened with $100.00 per day to clean up a property **_she didn't own_** yet here in 2022, same property not cleaned up and nobody is going after the deep pocket owner, Fannie Mae.

    b.   Bullying Donna trying to get rid of her white storage shed despite pleasing aesthetics and trashy sheds falling down were no issue while being accused of lowering property values for Ozawkie.

    c.   Bullying Donna refusing a building permit for a concrete pad despite the greenhouse not being a permanent attachment and intent to move if we left Ozawkie while another City Attorney had advised no right to pass on the aesthetics. After the threat not to pour, Craig Reinmuth took action as he is still steamed from being called a Nazi and no apology or any consideration that might be inappropriate.

    d.   Withing months to this even was really bullying Donna by letting his clients at Lakeshore make resolutions as if no due process were necessary and supporting the idea that despite failing to have his clients make a water claim in the estate that was pending and approved sale, and despite a clear deposit with agreement to have water connected, demanded thousands for a water meter which was never taken on paper or off the property and had passed with title to the house.

    e.   Most recent him being aware that the statute does not intend for a landlord to be responsible for a tenant's bill. KSA 12-808(c) which is read with gymnastics deciding to place Huffman, as a landlord, in the position of insurance for the City despite the clear intent of the statute not to have landlords responsible. The

**Exhibit A**

animus was demonstrated by calling Donna a bad landlord at this Oskaloosa meeting. [17]

36.     On March 7, 2019, Patty Hamm emailed a "service request form" for future Kansas Open Record Acts Requests.

> "Good Afternoon. Lee Hendricks, City Attorney, has asked me to forward you aService Request Form which is to be used for open records request."

Requiring the document is contrary to KORA.

37.     The same correspondence also declared paper copies at 35 cents per page, also excessive under KORA which is a presumptive 25 cents per page that the City or their Attorney also ignores.

38.     There is no dispute that prior to the move the City was responsible up to the building.  City "access" was pretextual as there is no need when it works to be there and there was never a time that the City was sued for a mere water leak on an old line although they did and still charge extra sewer when such purportedly occurs[18].

## NOTHING WAS DONE TO STOP WATER IN THE BASEMENT

39.     If a waterline breaks under the street or sidewalk, 303 and /or 301 will still have water in the basement although the description to the Historical Society misleads one to indicate this is why there is a change which was knowingly false and included to mislead by design.

## DESPERATE BEGGING

40.     On the afternoon of September 30, 2019, Mr. Heard taped a letter to the door what stated they would be doing the work on October 1, 2019, the next day, which was also

---

[17] Undoubtedly the subject of future litigation as the next time the City lets a renter go $800.00 back, if they can't find a source they announce they will "collect" from Donna in the notice.  Certainly too, they will not provide water at 301 and 303 Jefferson.  Such will then leave families homeless and/or create an interference in contract etc.  Mr. Hendrick's strong arming is too stressful and must stop.

[18] Claim – collecting unexplained thousands as if there was a leak when NO LEAK was at any apartment or otherwise. The only reasonable explanation given the investigation is that the City actually decided to charge as they had threatened and just called it water and sewer.

Exhibit A

likely to be done prior to Donna being aware because they were very aware there were not office hours being kept regularly.

41.     Plaintiff confirmed, prior to filing the suit, that the work on 303 Jefferson was in fact done on October 1, 2019. [19]

42.     Learning the City ignored any notice requirements and rejected the most reasonable solution that could have been reached, they then concealed the decision which is perfectly consistent with this idea that Mr. Hendricks has that after he gives advice it is not reviewable, those decisions are FINAL.

43.      On October 1, 2019 when the digging was brought to Donna's attention, Ms. ***Jones stated that the Historical Society was unaware "new holes" were being dug.***  In fact, the City had not disclosed the past damage to the building they caused about 10 years prior.

44.     Plaintiff was forced to beg Bill who of course giggled and delighted in digging anyway while Plaintiff desperately tried to protect my property.

45.     The Historical Preservation Office said the City would be responsible for damages, the City ignores this similar to not providing any decision on the "terms" being discussed also depriving Donna of a decision.[20]

46.     On and after the October 1, 2019 meter change, Hendricks began calls to the Historic Society and obtained a second letter saying the project was not objectionable on October 3, 2019. [21]

**FROZEN PIPES[22]**

47.     The City being more interested in getting their way and putting Donna in her

---

[20] Due Process intended under the KS Tort Act in a later amendment.  In this Petition only a KCPA violation alleged.
[21] The information provided was inaccurate and just a CYA attempt by the City who charged forward without regard to Donna or the Buildings.
[22] The tort action will be included after the waiting period when the petition is amended.

Exhibit A

place (under their heels while they grind), of course did not take any care and used pinching old pipes rather than shutting all water off and didn't bother to even cover the pipes apparently.

48.     Winter 2021 comes and of course the pipes at 303 Jefferson are frozen because they are out of the ground.  On that Friday, **February 16, 2021**, the 2 tenants call and Bill Heard comes to look into the hole which the pipe was exposed and as the water is spraying while Donna is thawing out with hairdryer.   Mr. Heard is doing what I anticipated, trying to see WHAT SIDE of the meter the pipe is broken on, despite him failing to cover the pipes which had never been exposed.

49.     This entire scenario was created as a power trip to put Donna in her place, total disregard due to animus and /or to get Donna to pay to replace City sidewalks. [23]

**MITIGATION**

50.     Donna spent her Friday night and weekend nursing pipes because when the water wasn't running it started a chain reaction.  The City workers left without even putting a "blanket" or cover on leaving Donna with the efforts and the bill which would be avoided but for their games.

51.     Had Donna not found assistance after hours on the weekend and took the prompt steps in mitigation, while the City was off warm at home not dealing with the situation and damaged they caused, the meter would have burst with water flowing freely until further damage of more frozen pipes and broken spots.

52.     Upon information and belief, the meter was damaged[24], and or the pipe coming out of the meter was broken during the freeze event.  This was or should have been known to the City of Oskaloosa.    Given the temperatures near in time to the freezing at 303 Jefferson

---

Injunctive Relief / Declaratory Judgment requested.
[24] Frozen beyond repair.

11

**Exhibit A**

yet, despite the ***active break*** at 303 Jefferson that bill strangely remained normal yet 301 Jefferson which had no known break had unexplainable readings of usage as 70,000 then 51,000, then 35,000, then 15,000 before normal usage was returned[25].

53.     At 301 Jefferson, unlike 303, the basement was not flooded as it had always been when a pipe broke, every apartment was checked and no explanation was ever given by the City.

54.     The City refused to make any adjustment to the bill and charged $1,083.91, then $799.94, then $550.97, then $250.86 before returning to more normal levels while 303 Jefferson, the location of broken pipes remained between 2,000 and 3,000 gallons.

55.     After returning to Kansas and checking each residence and with the tenants, and checking 301 Jefferson, Donna also met the City for this "mystery".

**CONCEALMENT OF METER READINGS ON THE "AUDIT"**

56.     Although requesting the records for both buildings, the "audit" the City provided failed to have, and concealed, the meter readings.

57.     Upon information and belief, the AUDIT and records have the meter readings available which were concealed in favor for round gallons.

58.     The City refused to adjust the bill without "proof" the water did not go through the sewer which they conceded was impossible.   Huffman's only option would be to take up the sidewalk to examine the pipe which would be more costly than paying the inflated bill.

59.     For all conduct, Plaintiff alleges the conduct was; known or should have been known, willful, intentional, reckless, wanton, and without regard to the Plaintiff, damage to property, and without regard to the rights of Plaintiff and obligation of the Defendant.

---

[25] Donna was not sent a bill for moving as was stated in the letters, absent any reasonable explanation for the water difference, the next most probable event was padding the bill to force paying for the move that Donna objected to.

**Exhibit A**

60.     The City of Oskaloosa engaged in deceptive acts and unconscionable acts and practices relating to the Plaintiff, the properties, and necessary water services.

61.     Water should be judicially noticed as an essential service.

62.     The conduct herein described is a violation of each or any of the following[26]:

KSA 50-626(b)(1)(A) Property or services have, approval, characteristics, uses, benefits or quantities that they do not have;

KSA 50-626(b)(1)(B), the supplier has approval that the supplier does not have;

KSA 50-626(b)(1)(D), property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;

KSA 50-626(b)(1)(F), property or services has uses, benefits or characteristics;

KSA 50-626(b) (2)   the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;

KSA 50-626(b) (3)   the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact;

KSA 50-626(b) (4)   disparaging the property, services or business of another by making, knowingly or with reason to know, false or misleading representations of material facts;

KSA 50-626(b) (8)   falsely stating, knowingly or with reason to know, that a consumer transaction involves consumer rights, remedies or obligations;

KSA 50-626(b) (9)   falsely stating, knowingly or with reason to know, that services, replacements or repairs are needed;

63.     Each act, and/or the totality of the conduct, by Defendant was deceptive, misleading, willful, wanton, unconscionable, and self-dealing for their own financial benefit. At all times the City acted knowingly stating what they knew or should have known was misrepresented hat they knew or should have known and/or were willful with the conduct or lack

---

[26] For each statute number, descriptors that are irrelevant are omitted to provide more accurate notice therefore, the statute number and letter is longer and more expansive than Plaintiff's claims are asserted herein.

**Exhibit A**

of conduct was deceptive, misleading, willful, wanton, unconscionable, and self-dealing for their own financial benefit, and with unbalance if any bargaining power to secure an agreement.[27]

64. Such conduct as set out herein and to be supplemented later is unconscionable.

65. Violation of KSA 50-627(b)(1). The supplier took advantage of the inability of the Donna to reasonably to protect her interests because of the reliance on Defendant to be honest in dealings relating to water, agreements, rights, and obligations particularly when setting up false narratives to achieve goals then never even taking the "terms" to meeting or providing Donna notice.

Defendant violated KSA 50-627(b)(3) as Plaintiff was unable to receive a material benefit from the subject of the transaction of moving the water meters.[28]

Defendant violated KSA 50-627(b)(5) the transaction the supplier tried to induce the Plaintiff to enter into **was excessively onesided in favor of the supplier**; such as increasing responsibility and liability to Plaintiff while on water lines while eliminating responsibility for the City.

KSA 50-627(b)(6) the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment; such as the level of privacy and scope of the interactions.

KSA 50-627(b)(7) the water supplier attempted to exclude or limit warranty by assigning such a small time for the move of the meter as to be even less than implied warranties and other law.

65. The above and foregoing violates, or attempted to violate KSA 50-625, in attempting to demand the illusory agreement forcing Plaintiff to take additional obligation and forego benefits of the meter being within the building when moving to make Plaintiff then responsible under the sidewalk and/or in the street.

## ENHANCED PENALTIES

66. Donna is a disabled consumer as a result of an automobile accident on June 24,

---

[27] KSA 50-627 and KSA 50-625
[28] Similarly, the City would benefit from new sidewalks when the repeat of 2018 occurs.

14

Exhibit A

2011.

67.  As such, the KCPA provides for enhanced penalties up to $20,000[29] per act.

## COUNT 2

## BREACH of CONTRACT

68.  The foregoing is included by reference as though fully set forth herein.

69.  The City of Oskaloosa is in two water contracts with Plaintiff or her business entities.

70.  Among other things, the contracts require accurate water usage readings to obtain a proper billing amount and require the proper maintenance of lines and meters for example.

71.  The City breached both contracts.

72.  Damages in an undetermined amount include the inflated charges above, for example.  These will be set forth in more certainty after a discovery period.

## RESPONDEAT SUPERIOR

The acts of the employees, officers, and agents, are imputed to the Defendant under the theory of Respondeat Superior as at the point of notice pleading without discovery the actual capacity, decisions, and responsibility of each cannot be ascertained.  Should Defendant interplead their employee, Plaintiff shall join in the same.

## RESERVATION TO AMEND AND ASSERT ADDITIONAL CLAIMS/RELATAE BACK

Various claims that may be discovered or result in being ripe after filing of this petition, such as under the Kansas Tort Claims Act are anticipated.

**WHEREFORE** Plaintiff, based upon the above and foregoing, and as may be further supplemented, orally or in writing, pray that this Honorable Court:

(1).  Grant the petition in whole;

---

[29] Up to $10,000 for KCPA, doubled for disabled consumers for up to an additional $10,000 per act.

15

**Exhibit A**

(2)     Award pecuniary damages for losses, in an amount to be determined after further discovery;

(3).     Award statutory penalties up to an amount of $10,000 per act.

(4).     Award enhanced penalties up to an additional $10,000 per act as to Donna as in the statutory category of disabled.

(5).     Award expenses and interest in the form and amount allowed by statute and other law.

(6) Other relief as is deemed equitable, just, and proper under the facts and the law in an amount that exceeds $75,000.

(7) Declaratory and Injunctive relief for future water bills, readings, responsibility relating to the water lines and locations, compliance with KORA and  other relief that may be deemed just and proper.

**TRIAL BY JURY DEMANDED**

Respectfully submitted,

By: /s/ Donna L. Huffman
     PO Box 1, 303 Jefferson Street
     Oskaloosa, KS 66066
     Ph: (785) 840-5259
     Fax: (785) 876-2105
     **PLAINTIFF PRO SE**

16

**Exhibit A**